DECISION
This matter came on for trial before the court, jury waived.
 Facts and Travel
Veronica M. Pimental and Anthony J. Costa are brother and sister. They are the children of Antonio Costa and Isabella Costa. In 1978, the parents deeded the family home on Main Street in West Warwick to the two children, reserving to themselves a life estate. Though Mrs. Pimental moved out when she was married in the 1950s, Anthony J. Costa continued to reside in the house.
In 1990, Isabella Costa, then widowed, moved in with her daughter, Mrs. Pimental. At some point, Mrs. Costa added Mrs. Pimental's name to a bank account. Mrs. Costa stayed with Mr. and Mrs. Pimental for twelve years, when she moved into a nursing home. In September of 2003, Mrs. Costa passed away. Shortly after her death, Mrs. Pimental, her husband, and Mr. Costa met to discuss the administration of Mrs. Costa's estate. While the parties disagree on some of what was said, there is no dispute that Mr. Costa expressed his desire to continue to stay in the house, Mrs. Pimental offered Mr. Costa half of the monies in a bank account, Mr. Costa *Page 2 
left abruptly, and no consensus was ever reached. The parties have not spoken to each other since 2003.
Mr. Costa continued to reside in the house through the Probate Court process.[1] In December of 2006, Mrs. Pimental instituted this action seeking to partition the family home.
 Analysis
There is no contract between the parties.
At trial, Mr. Costa claimed that the parties came to an agreement concerning the division of the proceeds of the account and the ownership of the home. Mrs. Pimental disputed this, testifying that Mr. Costa wanted to divide the monies in the joint account and to keep the house. Mrs. Pimental claimed that she offered to divide the funds, and the home, but her brother then walked out after the discussion became heated. By his own testimony, Mr. Costa acknowledges he was upset because his sister had refused to divide the use of the mother's money to pay for the ongoing expenses of the home.
Mr. Costa was clear about what he desired to achieve at the conference, and what he proposed. He hoped to continue to reside in the home, and asked that the money in the account be divided to pay for the expenses of the home. Mr. Costa's testimony concerning what was agreed was contradictory. He acknowledged that Mrs. Pimental did not agree to his proposal, and that he left the conversation directing her not to contact him again. Later in his testimony, he acknowledged that Mrs. Pimental refused to convey the real estate to him, and she refused to use half of the account monies for the home. In short, the parties never reached an accord, they *Page 3 
never agreed to the same terms. Though Mr. Costa alleged there was an agreement, he contradicted himself in his testimony concerning what agreement was reached.[2]
Obviously, agreed terms are a prerequisite to a binding contract. "In addition to mutual assent, a bilateral contract requires mutuality of obligation, which is achieved when both parties are bound legally to the making of reciprocal promises." Centreville Builders, Inc. v.Wynne, 683 A.2d. 1340, 1341 (R.I. 1996). "For the parties to form an enforceable contract, there must be an offer and an acceptance. Each party must have and manifest an objective intent to be bound by the agreement. For either an express or implied contract, a litigant must prove mutual assent or a meeting of the minds between the parties."Opella v. Opella, 896 A.2d 714 (R.I. 2006). "This Court has established that for parties to form a valid contract, each must have the intent to be bound by the terms of the agreement. . . . For any contract to be enforceable however the parties must manifest their object intent to be bound by their agreement." Weaver v. American Power ConversionCorporation, 863 A.2d 193, 198 (R.I. 2004). "An essential element to the formulation of any true contract is an `intent to contract.'"Bailey v. West, 105 R.I. 61, 66, 249 A.2d. 414, 417 (1969).
Here, it was never established that Mr. Costa and Mrs. Pimental agreed on anything during the 2003 meeting. No contract existed between the parties concerning the ownership or management of the West Warwick property.
The remedy of partition.
The Rhode Island General Laws allows for the Superior Court to partition property held by joint owners. (G.L. 1956 Section 34, Chapter 15.) *Page 4 
 Order of sale — In an action for partition, the superior court may, in its discretion, upon motion of any party to the action, order the whole premises sought to be divided, or any particular lot, portion, or tract thereof or the interest of the plaintiff or plaintiffs or of the defendant or defendants in the whole premises, or in any particular lot, portion, or tract thereof, to be sold, either at public auction or by private contract, under the direction of the court, by the commissioner or commissioners appointed to divide or sell the same; provided, that if the sale is made by private contract, it shall not be made for less than the sum fixed by the court in its decree authorizing the sale by private contract. Section 34-15-16.
The sale conducted by the commissioner and approved by the court is binding on the parties to the action and adjudicates all of the claims relative to the real estate. Sections 34-15-17 and 34-15-19.
While the statute provides the mechanisms for such sales, it does not establish the criteria for the partition, but for an exercise of the court's discretion. While the court may have discretion, it should be exercised with caution, and mindful of the rights of all owners.
In the case of Bianchini v. Bianchini, 76 R.I. 30, 35 (R.I. 1949), the high court noted that the statutory remedy of partition deviated from the right in equity for owners to partition by metes and bounds. The statute now provided discretion. Where the trial court authorized a sale of a wife's residence when the husband had vacated, the high court remanded for an explanation of the exercise of the discretion.
In a more recent case, the high court discussed that discretion further:
 A petition for partition where the property is not capable of partition by metes and bounds is addressed to the sound judicial discretion of the trial justice who is required to consider all facts and circumstances in evidence before granting partition. However, the general rule is that inconvenience or difficulty in making the partition or hardship or substantial loss or injury to some or all of the parties does not affect the right to partition.
 To say, however, that the question is addressed to the trial justice's discretion does not mean that his ruling is not reviewable. What it does mean is that the ruling will be sustained provided the discretion has been soundly and judicially *Page 5 
exercised, that is, if it has been exercised in the light of reason applied to all the facts and with a view to the rights of all the parties to the action, and not arbitrarily or willfully, but with just regard to what is right and equitable under the circumstances and the law. The decision of a trial court made in exercise of a discretionary power should not be disturbed unless it clearly appears that such discretion has been improperly exercised or that there has been an abuse thereof.
 It is apparent that the trial justice's finding that the granting of partition in the circumstances here would be most inequitable at the present time, was based on the fact that partition would result in hardship or inconvenience to defendant.
 Here, although the trial justice apparently considered the hardship to the defendant, in our opinion he clearly failed to fully consider the right of the plaintiff to enjoy full benefits of her property and therefore abused his discretion in denying the plaintiff's petition. De Bartolo v. Di Battista, 17 R.I. 349, 353-354 (R.I. 1976) (citations omitted).
Accordingly, mindful of the interests of each of the parties, the Court must set forth its reasoning. Several factors are significant in allowing a partitioning here.
First, the owners are in disagreement. Where the property consists of a single-family home, the cooperation of the parties is critical to management of the property, and a fair division of the proceeds. Here, the parties have not spoken to each other for almost five years. The continued co-ownership of the home now serves as a detriment to building a relationship. Having considered the testimony of each of the parties, the Court cannot envision a rental situation or any other alternative whereby the parties could co-operate for the mutual benefit of each.
Second, one owner has no use or clear benefit. Mr. Costa continues to reside in the house, but Mrs. Pimental has no use and no ability to receive rent.
Third, there appears to be no significant opposition to the sale, only to the division of proceeds. While Mr. Costa obviously does not desire to be ejected from his residence, continuing to live in a property over the objections of the co-owner cannot be comforting to him. *Page 6 
Finally, there is no agreement between them on the management or disposition of the property.
Each of these factors weighs heavily in favor of partitioning the property, though the Court is quite mindful that one of the owners continues to reside in the home, has lived there since childhood and desires to be able to do so. As in Bianchini, this is not an investment property, it is his family home.
Accordingly, the Court will allow for partitioning of the home, preserving to Mr. Costa an opportunity to continue to own the property, if reasonably feasible.
Remedy provided.
At trial, the parties focused on only two issues: Whether a partition is appropriate, and which costs are chargeable to the sale. Counsel submitted a list of expenses incurred to date. Some of the expenses were questioned. The parties never focused on the issue of how to sell the home. A private sale or other method of conveyance may be more beneficial to the parties. As each of the parties may desire to keep the home, those options should be considered by the parties and the Court prior to a forced sale. The Court is reluctant, at this point, to appoint a commissioner to sell the home at greater expense to each of the parties.
 Conclusion
Accordingly, while a partition is allowed, this case is scheduled for a status conference on March 18, 2008, at 9:00 a.m. Clients need not attend but counsel should be prepared to discuss a private auction (between the parties) or any other proposals for effectuating a sale or transfer, how any proceeds should be divided, and any other proposals for resolution. No testimony or other evidence will be presented at this time.
[1] A probate estate was opened in May 2004. The joint account, valued at $40, 000 was not included as an asset to the probate estate. The inventory of the estate was only valued at about $1, 455 and included only tangibles.
[2] Early in Mr. Costa's testimony, he claimed that when he suggested dividing the account to pay for ongoing expenses Mrs. Pimental said "fine." Moments later he testified that this division of the funds was not in return for a division of the property and that Mrs. Pimental refused to agree to use one-half of the mother's funds to pay for property expenses. *Page 1